O

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICHARD JOHNSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-03-4186 |
| | § | |
| MEDTRONIC, INC., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM AND ORDER

Pending is Defendant Medtronic, Inc.'s Motion for Partial Summary Judgment and Severance (Document No. 56). After having carefully reviewed the motion, response, reply, and the applicable law, the Court concludes that the motion for partial summary judgment should be granted.

I. Background

Plaintiff Richard Johnson ("Plaintiff") brings this products liability action against Defendant Medtronic, Inc. ("Medtronic"), the manufacturer of an implantable neurostimulation system implanted in Plaintiff to control pain from which he was suffering as a result of post-polio syndrome.[1]  See Document No. 37 ex. A ¶ 6.

---

[1] A neurostimulation system consists of three parts: (1) an implantable pulse generator ("IPG"), which includes an enclosed battery; (2) a lead wire to transmit the electrical impulse; and (3) an extension wire connecting the lead wire to the IPG. See Document No. 61 at 2.

In 1997, Plaintiff's treating physician Dr. Stonecipher implanted in Plaintiff a neurostimulation system consisting of an Itrel 3 model IPG and a Resume model lead wire. *See* Document No. 61 ex. A 37-40. In February 2001, Dr. Stonecipher added a second Resume lead to control pain at Plaintiff's sciatic nerve and replaced the Itrel 3 IPG with a Synergy model IPG (the "Synergy"), which, unlike the Itrel 3 IPG, was capable of powering both Resume leads. Id. at 55-57. In his Original Complaint, Plaintiff alleges that before he purchased the Synergy IPG, "it was represented to [him] that the battery life of the Synergy would be approximately five years," but in fact the batteries in his Synergy failed after approximately one year of use. *See* Document No. 37 ex. A ¶¶ 7-8.[2] Thus, Plaintiff alleges, Medtronic violated § 17.46(b)(5) of the Texas Deceptive Trade Practices Act ("DTPA"), which prohibits representations "that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have." *See* id. ¶¶ 19-21.[3] Medtronic now moves for partial summary judgment on Plaintiff's DTPA claims.

---

[2] According to Dr. Stonecipher's records, Plaintiff's Synergy IPG was replaced with a second Synergy IPG in July, 2002. *See* Document No. 61 ex. A at 71-73.

[3] Plaintiff also asserts strict products liability, negligence, and breach of warranty claims. *See* Document No. 37 ex. A ¶¶ 14-18.

II.  Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the

nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

### III. Discussion

Medtronic argues for summary judgment on the DTPA claim because (1) the DTPA, by its terms, does not apply to products liability suits for bodily injury; (2) the Medical Device Amendments ("MDA") to the Food, Drug, and Cosmetic Act ("FDCA"), specifically 21 U.S.C. § 360k(a), preempts Plaintiff's DTPA claim; and (3) there is no evidence that Medtronic made to Plaintiff any representation actionable under the DTPA. *See* Document No. 56. Assuming arguendo that Plaintiff's claim is not one for bodily injury that is precluded by the DTPA nor a claim preempted by the MDA, Plaintiff's claim still fails because there is no evidence that Medtronic engaged in any conduct prohibited by the DTPA.

4

To prevail on a DTPA claim, Plaintiff must demonstrate that: (1) he was a consumer of Medtronic's goods; (2) Medtronic committed a false, misleading, or deceptive act upon which Plaintiff relied to his detriment; and (3) Medtronic's wrongful act constituted a producing cause of Plaintiff's damages.  *See* TEX. BUS. & COM. CODE ANN. §§ 17.46(b), 17.50(a) (Vernon 2002); <u>Henry Schein, Inc. v. Stromboe</u>, 102 S.W.3d 675, 686 (Tex. 2002); <u>Doe v. Boys Clubs of Greater Dallas, Inc.</u>, 907 S.W.2d 472, 478 (Tex. 1995).  Plaintiff alleges that Medtronic falsely represented that the battery life of the Syngery IPG would be approximately five years and that based on this representation, Plaintiff decided to purchase the Syngery.  *See* Document No. 37 ex. A ¶¶ 8, 19-20.  During his deposition, however, Plaintiff specifically testified that Medtronic made no representation to him about the estimated battery life of the Synergy.  *See* Document No. 56 ex. 1 at 193-94 ("Q: Medtronic never gave you any estimate as to how long your IPG batteries--for either the Synergy devices or the Itrel 3 devices, true?  A: Medtronic did not give me any estimate, no.").

Plaintiff further testified that the only warranties or representations that Medtronic made about the Synergy were contained in Medtronic's user manual for the Synergy, which states in pertinent part:

5

    COMMON QUESTIONS

    *How long will the battery in my pulse generator last?*

    The battery life of the pulse generator depends on the number of hours you use it each day and how strong the stimulation must be to control your pain.  Your doctor can give you an estimate once your pulse generator settings have been determined.

*See* Document No. 56 ex. 1 at 192-93; ex. 2.  Plaintiff concedes that neither this statement nor any other representation in the Synergy user manual is false.  *See* <u>id.</u> ex. 1 at 192-93.

    In his opposition brief Plaintiff again admits that Medtronic "made no direct representations" to him but contends for the first time that because Medtronic "told Plaintiff in the user manual that he should rely on his physician to estimate the life the of battery," and because Metronic "indicated, in its user manual by implication, that it had provided [Plaintiff's] physician with sufficient information by which to formulate a reasonable estimate of battery life," Medtronic should be "bound by" the representations made to Plaintiff by Dr. Stonecipher.  *See* Document No. 59 at 1-2, 5-8.[4]  In his deposition, however, Plaintiff testified that he did not receive the Synergy user manual until approximately one month after his Synergy IPG was implanted, and that once he received the user manual, he did not read the above-

---

[4] According to Plaintiff, Dr. Stonecipher told him that he (Dr. Stonecipher) "expected, with the way [Plaintiff] was using [his Synergy IPG], it would last five years."  Document No. 59 ex. 3 at 172-73.

quoted portion relating to battery life. *See* Document No. 56 ex. 1 at 131-32. Thus, the uncontroverted summary judgment evidence is that (1) Plaintiff did not purchase the Synergy IPG in reliance on any representation in Medtronic's user manual, and (2) the user manual was not the producing cause of any damages Plaintiff may have suffered. Accordingly, Plaintiff cannot sustain his DTPA claim based on the statements or representations contained in the Synergy user manual.

Plaintiff also suggests for the first time in his response brief that Medtronic should be held liable under the DTPA for the representation Dr. Stonecipher allegedly made based on the learned intermediary doctrine. *See* Document No. 59 at 2. Texas courts recognize the learned intermediary doctrine, under which "a product manufacturer is excused from warning each patient who receives the product [of the product's risks] when the manufacturer properly warns the prescribing physician of the product's dangers." Porterfield v. Ethicon, Inc., 183 F.3d 464, 467-68 (5th Cir. 1999). "[W]hen the warning to the intermediary is inadequate or misleading," however, "the manufacturer remains liable for injuries sustained by the ultimate user." Id. at 468 (quoting Alm v. Aluminum Co. of Am., 717 S.W.2d 588, 591-92 (Tex. 1986)). The learned intermediary doctrine applies to all causes of action, including DTPA violations, based on a failure to warn. *See* Dyer v.

Danek Med., Inc., 115 F. Supp. 2d 732, 740 (N.D. Tex. 2000) (citing cases).[5]

To impose liability under the learned intermediary doctrine, Plaintiff must show both that the product warnings given by Medtronic to Dr. Stonecipher were defective and that the inadequate warnings were a producing cause of Plaintiff's subsequent injuries. Id. During his deposition, Dr. Stonecipher testified that he had implanted spinal cord stimulators and stimulator systems approximately 100 times before 1997, and he was aware that implantable IPGs were battery operated and required surgical replacement upon depletion of the battery. *See* Document No. 61 ex. A at 11, 13-14. Dr. Stonecipher further testified that once Medtronic made the Synergy available, he made himself aware of the risks and benefits of that particular device through the available literature and manuals for the Synergy IPG. Id. at 12. When he

---

[5] TEX. BUS. & COM. CODE ANN. § 17.46(b)(24) describes as a deceptive trade practice failing "to disclose information concerning goods or services which was known at the time of the transaction if failure to disclose such information was intended to induce the customer into a transaction into which the customer would not have entered had the information been disclosed," and the learned intermediary doctrine has been applied in this context. *See* Dyer, 115 F. Supp. at 740. Plaintiff, however, has not alleged any violation of § 17.46(b)(24) in his Complaint. His claims are premised instead on § 17.46(b)(5), which proscribes *representing* that the products had "sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities which they do not have." Plaintiff has not cited and the Court has not found any application of the learned intermediary doctrine to a § 17.46(b)(5) claim. Treating Plaintiff's newly conceived argument in the light most favorable to Plaintiff, however, it still fails for the reasons that follow.

implanted the Synergy in Plaintiff, Dr. Stonecipher knew that the battery life of the IPG could not be estimated with any precision and would depend on the number of hours Plaintiff used the device and the strength of the stimulation involved.  Id. at 93-96, 116.  In sum, Dr. Stonecipher's uncontroverted testimony is that he received entirely adequate warnings about the risks associated with the Synergy, including the fact that the battery life of the Synergy could not be estimated with precision and the battery eventually would require surgical replacement.  Because Plaintiff has failed to raise a genuine issue of material fact that Medtronic's warnings to Dr. Stonecipher were defective and/or a producing cause of Plaintiff's subsequent injuries, Plaintiff cannot recover under the learned intermediary doctrine as a matter of law.  See Porterfield, 183 F.3d at 468 ("If the physician was aware of the possible risks involved in the use of the product but decided to use it anyway, the adequacy of the [manufacturer's] warning is not a producing cause of the injury.").

Finally, Plaintiff contends that Medtronic's motion for summary judgment "is limited to Plaintiff's DTPA claims and representations concerning the battery life of the IPG" because Medtronic "has not moved for summary judgment on all representations or warranties, implied or express, that do not concern battery life."  See Document No. 59 at 1.  According to Plaintiff, "Medtronic takes a subset of the representations and/or

9

warranties and seeks to cast them as Plaintiff's only claims under the DTPA," but in fact Plaintiff "still has viable DTPA claims as a breach of an express or implied warranty is a tie in to the DTPA and therefore any express or implied warranty claim may be brought under the DTPA." Id. at 2. Thus, Plaintiff argues, "even if this Court makes a ruling as to the battery life of the Synergy IPG, such a ruling should not dismiss Plaintiff's DTPA claims not related to the battery life of the Synergy IPG." Id.

In its motion for summary judgment, Medtronic contends that "[t]here is no genuine issue as to any material fact in regard to Plaintiff's claim for damages under the Texas Deceptive Trade and Practices Act ('DTPA')" and that "Plaintiff cannot establish factually or legally any claim against Medtronic under the DTPA." Document No. 56 at 1, 7. The section of Plaintiff's Original Complaint entitled "Deceptive Trade Practices Act" alleges as follows:

> 19. Medtronic engaged in Deceptive Trade Practices as defined by Texas Business and Commerce Code § 17.45, *et seq*. Specifically, Defendant represented that the neurostimulator, extension(s), and/or lead(s) at issue in this cause had "sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . ." TEX. BUS. & COMM. CODE § 17.46(b)(5).
>
> 20. Based on Defendant's representations, such as the representation as to battery life, Plaintiff agreed to purchase the neurostimulator, extension(s), and/or lead(s) in question and has suffered actual damages for which recovery is sought herein. The representations by the Defendant were the producing cause of those damages for which recovery is sought herein.

10

Document No. 37 ex. A. ¶¶ 19-20. These paragraphs allege only that Medtronic violated § 17.50(a)(1) of the DTPA, which imposes liability for "the use or employment by any person of a false, misleading, or deceptive act or practice that is" enumerated in § 17.46(b); they do not allege that Medtronic violated § 17.50(a)(2) of the DTPA, which imposes liability for "breach of an express or implied warranty." TEX. BUS. & COM. CODE ANN. § 17.50(a)(1)-(2). Moreover, nothing in Plaintiff's separately stated breach of warranty claim indicates that Plaintiff is seeking to recover damages under § 17.50(a)(2) of the DTPA. *See* Document No. 37 ex. A ¶ 18. Thus, Plaintiff's contention that Medtronic's motion for summary judgment does not address the entirety of Plaintiff's DTPA claim is without merit.

Nonetheless, to the extent Plaintiff, through his response brief, now seeks damages under the DTPA for his breach of warranty claim, Medtronic argues in its reply brief that it is entitled to summary judgment on the breach of warranty claim because there is no evidence that Medtronic made or breached any express or implied warranty of fitness for a particular purpose.[6] As discussed above, Plaintiff testified during his deposition that Medtronic made no

---

[6] In the section of his Original Complaint entitled "Breach of Warranty," Plaintiff alleges that Medtronic "expressly and/or impliedly warranted that the neurostimulator, extension(s) and lead(s) were fit for the particular purpose for which they were being used at the time they injured the Plaintiff" and that Medtronic "breached the express and implied warranty of fitness." *See* Document No. 37 ex. A ¶ 18.

11

warranties or representations to him other than those contained in Medtronic's user manuals, and Plaintiff stated that he did not believe anything in the user manuals to be untrue. *See* Document No. 56 ex. 1 at 192-93. Plaintiff points to no evidence and provides no explanation in support of his claim that Medtronic breached an express warranty of fitness for a particular purpose. Accordingly, Plaintiff has not raised a genuine issue of material fact for recovery of damages under the DTPA on the theory that Medtronic breached an express warranty. *See*, *e.g.*, Elliott v. Kraft Foods N. Am., Inc., 118 S.W.3d 50, 56 (Tex. App.--Houston [14th Dist.] 2003) ("To recover under the DTPA on a breach of warranty, a plaintiff must show (1) consumer status, (2) *existence of the warranty*, (3) *breach of the warranty*, and (4) the breach was a producing cause of damages.") (emphasis added).

Nor can Plaintiff recover damages under the DTPA on the theory that Medtronic breached an implied warranty of fitness for a particular purpose. Under Texas law, an implied warranty of fitness for a particular purpose arises when the seller, at the time of the transaction, has reason to know of the particular purpose for which the goods are required, and the buyer is relying on the seller's skill or judgment to select or furnish goods suitable for that particular purpose. *See* TEX. BUS.& COM. CODE ANN. § 2.315 (Vernon 1994). An implied warranty of fitness for a particular purpose does not arise, however, unless the buyer's

12

purpose for the goods differs from the usual and ordinary use of the goods. Coghlan v. Aquasport Marine Corp., 73 F. Supp. 2d 769, 774 (S.D. Tex. 1999) (Kent, J.) ("In other words, the particular purpose must be some unusual, out of the ordinary purpose peculiar to the needs of an individual buyer."); *see also* TEX. BUS.& COM. CODE ANN. § 2.315 cmt. 2 ("A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer that is peculiar to the nature of his business.").

In this case, it is undisputed that Dr. Stonecipher, not Medtronic, prescribed Medtronic's neurostimulation system for implantation in Plaintiff. *See* Document No. 61 ex. A at 10, 117. There is no evidence that Plaintiff was using Medtronic's neurostimulation system for any purpose other than the usual and ordinary purpose for which neurostimulation systems are used: to control pain. *See*, *e.g.*, id. at 18, 26-28, 35. Thus, Plaintiff has failed to raise genuine issue of material fact that Medtronic made and breached an implied warranty of fitness for a particular purpose. Because Plaintiff cannot sustain a claim under the DTPA on any of his pled or unpled breach of warranty theories, Medtronic is entitled to summary judgment on Plaintiff's DTPA claim for breach of warranty.

III. <u>Order</u>

For the reasons set forth, it is

ORDERED that Defendant Medtronic, Inc.'s Motion for Partial Summary Judgment (Document No. 56) is GRANTED, and Plaintiff Richard Johnson's DTPA claims are in all things DISMISSED on the merits.

The Clerk shall notify all parties and provide them with a signed copy of this Order.

SIGNED at Houston, Texas, on this 23rd  day of June, 2005.

---

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE